1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

IVAN CHEKHOVSKII,

                    Petitioner,

        v.

BRUCE SCOTT, ET AL,

                    Respondent.

Case No. 2:25-cv-02550-TLF

ORDER GRANTING HABEAS
PETITION

Petitioner Ivan Chekhovskii, a native of Kazakhstan and a citizen of Russia, is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. Dkts. 1, 5[1]; Dkt. 7, Declaration of Deportation Officer Robert Andron ("Andron Decl.") ¶ 3; Dkt. 10, Declaration of Michelle R. Lambert ("Lambert Decl."), Exs. A, C. He has been detained since on or about June 4, 2024. *Id.*

On December 12, 2026, petitioner filed a petition for writ of habeas corpus under 28 U.S.C. § 2241, through counsel, arguing his continued detention under 8 U.S.C. § 1225(b) without a bond hearing violates his due process rights under the Fifth Amendment to the United States Constitution. Dkts. 1, 5.

---

[1] Petitioner originally filed a petition with formatting errors at Dkt. 1 with exhibits and re-submitted the same petition with the errors corrected at Dkt. 5, without exhibits.

ORDER GRANTING HABEAS PETITION - 1

Petitioner seeks an order from the Court: (1) directing his immediate release; or, (2) to schedule an individualized bond hearing before this Court, or in, the alternative before an immigration judge within 14 days; (3) issue a declaration that petitioner's ongoing prolonged detention violates the Due Process Clause of the Fifth Amendment; and (4) award petitioner's attorney's fees and costs under the Equal Access to Justice Act. Dkt. 5 at 23-24.

The Government has filed a return memorandum arguing petitioner's detention is lawful under 8 U.S.C. § 1225(b) and the Due Process Clause of the Fifth Amendment. Dkt. 8. Petitioner, represented by counsel, has filed a response/traverse. Dkt. 12.

The parties have unanimously consented to the jurisdiction of a Magistrate Judge. Dkt. 6, 11.

Having considered the parties' submissions, the balance of the record, and the governing law, the Court recommends that the petition (Dkts. 1,5) be GRANTED as provided below.

## I.    BACKGROUND

Petitioner is a native of Kazakhstan and citizen of Russia. Dkt. 5 at 2; Dkt. 9, Andron Decl. ¶ 3; Dkt. 10, Lambert Decl., Exs. A-C. On June 3, 2024, petitioner entered the United States from Mexico without lawful status and was encountered by U.S. Customs and Border Protection ("CBP"). Dkt. 10, Lambert Decl., Ex, A.[2]. Petitioner did not have any documents that would allow him to enter the United States and provided a Russian passport. *Id.* He was processed as an arriving alien, subject to expedited

---

[2] The Declaration of DO Andron states the date is June 3, 2023. The government clarifies "2023" is a typographical error since the petitioner and exhibits provided by Attorney Lambert state June 3, 2024. Dkt. 9, Andron Decl. ¶ 4; Dkt. 8 at 2; Dkt. 10, Lambert Decl., Ex, A; Dkt. 5 at 2; Dkt. 12, Petitioner's Reply, at 2.

removal. *Id.* at Ex. B. While in CBP custody, petitioner expressed fear of returning to Russia due to his sexual orientation. Dkt. 5 at 2; Dkt. 9, Andron Decl. ¶ 5. On June 11, 2024, petitioner was interviewed by a United States Citizenship and Immigration Services ("USCIS") asylum officer who determined that petitioner had a credible fear of persecution or torture in Russia. Dkt. 5 at 6; Dkt. 9, Andron Decl. ¶ 7. He passed his interview, and on June 18, 2024, CBP issued a Notice to Appear ("NTA") charging petitioner with being removable pursuant to INA § 212(a)(7)(A)(i)(I) (codified at 8 U.S.C. § 1182(a)(7)(A)(i)(I)) and placing him into removal proceedings. *Id.* An initial hearing date on the Notice to Appear ("NTA") was set for July 15, 2025. Dkt. 9, Andron Decl. ¶ 7. He was transferred to the NWIPC on September 10, 2024. Dkt. 5 at 6; Dkt. 1, Ex. D, Declaration of Chekhovskii ("Chekhovskii Decl.") at 65.

Petitioner alleges he made requests for discretionary parole to ICE Officers on September 10, September 13, September 25, October 12, October 28, and November 12 of 2024. *Id.* Each request was denied. *Id.* His final parole request, submitted with a sponsor packet, made on January 23, 2025, was denied and stated "that according to a presidential directive parole was not being granted." *Id.* at 66.

On October 15, 2024 petitioner filed an I-589, Application for Asylum and Withholding of Removal with the Immigration Court. Dkt. 9, Andron Dec. ¶ 8. On January 24, 2025, petitioner filed an I-589 application through Counsel. *Id.* ¶ 9.

On March 10, 2025, a Tacoma Immigration Judge denied petitioner's applications for Asylum, Withholding of Removal and Deferral of Removal under the Convention Against Torture and ordered him removed to Russia. *Id.* ¶ 10; Dkt. 1, Ex. B at 34-36.

1    On April 7, 2025, petitioner filed a Bond Redetermination Request. Dkt. 9,

2    Andron Dec., ¶ 11.[3] On April 8, 2025, petitioner appealed the decision of the

3    Immigration Judge to the Board of Immigration Appeals ("BIA"). Dkt. 9, Andron Dec. ¶

4    12. On April 9, 2025, the Immigration Judge denied petitioner's bond based on lack of

5    jurisdiction because petitioner was an "arriving alien." Dkt. 9, Andron Dec. ¶ 13. The BIA

6    dismissed the appeal on September 5, 2025. Dkt. 1, Ex. B at 37-42.

7    On October 1, 2025, petitioner filed a motion to remand his immigration

8    proceedings and on October 16, 2025, petitioner filed another Bond Redetermination

9    Request. Dkt. 9, Andron Dec. ¶ 15-16.[4] On October 21, 2025, the Immigration Judge

10    denied petitioner's request for reconsideration of the denial of bond finding no changed

11    circumstances because petitioner was still an "arriving alien and therefore still ineligible

12    for bond." Dkt. 9, Andron Dec. ¶ 16.

13    On September 5, 2025, the BIA dismissed petitioner's appeal of the March 10,

14    2025 decision of the Immigration Judge and denied petitioner's motion to remand. Dkt.

15    9, Andron Dec., ¶ 17. On September 25, 2025, petitioner filed a Petition for Review with

16    the 9th Circuit, which is pending. Dkt. 9, Andron Dec. ¶ 17; Dkt. 5 at Ex. C. The Ninth

17    Circuit's Motion for Stay of Removal remains in effect. Dkt. 5 at Ex. C.

18

19

20

21

---

[3] Petitioner states he filed his bond redetermination request on March 10, 2025. Dkt. 1, Ex. D,
22    Chekhovskii Decl. at 66.

[4] According to petitioner, "[h]e filed one more bond determination request on October 10, 2025, and has
23    not yet received a response from the Court." Dkt. 5 at 6; Dkt. 1, Ex. D, Chekhovskii Decl. at 66. However,
the declaration of DO Andron states it was filed on October 1, 2025 and a denial was issued October 21,
24    2025. Dkt. 9, Andron Dec. ¶¶ 15-16.

25

ORDER GRANTING HABEAS PETITION - 4

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

## II.    DISCUSSION

### A.  Statutory Basis for Petitioner's Detention

Title 8 of the United States Code §§ 1225, 1226, and 1231 govern immigration detention. "Where an alien falls within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." *Prieto-Romero v. Clark*, 534 F.3d 1053, 1057 (9th Cir. 2008).

The parties agree petitioner is detained under § 1225(b). Dkt. 12 at 3-4 ("Mr. Chekhovskii does not dispute the Federal Respondents' assertion that the statute under which Mr. Chekhovskii is detained, § 1225(b)(1)(B), 'mandates his detention.'") (citing Dkt. 8 at 4 and Dkt. 1 at 10). *See Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018). Section 1225(b)(1), applies to, among others, noncitizens initially determined to be inadmissible because of fraud, misrepresentation, or lack of valid documentation. *Id.* (citing § 1225(b)(1)(A)(i)). Section 1225(b)(2) is broader and "serves as the catchall provision that applies to all applicants for admission not covered by § 1225(b)(1)" (with specific exceptions that neither party argues are applicable here). *Jennings*, 583 U.S. at 287-88 (citing §§1225(b)(2)(A), (B)).

"Normally, noncitizens covered by § 1225(b)(1) are subject to an expedited removal process that does not include a hearing before an Immigration Judge or review of the removal order." *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1116 (W.D. Wash. 2019) (citing 8 U.S.C. § 1225(b)(1)(A)(i)). But, where a noncitizen "indicates either an intention to apply for asylum ... or a fear of persecution," the inspecting immigration officer must refer that noncitizen for an interview with an asylum officer. 8 U.S.C. §

1225(b)(1)(A)(ii); 8 C.F.R. § 208.30(d). Thereafter, if the asylum officer determines that the noncitizen has a credible fear of persecution, then the noncitizen "shall be detained for further consideration of the application for asylum." 8 U.S.C. § 1225(b)(1)(B)(ii); *Banda*, 385 F. Supp. 3d at 1112.

Under § 1225(b), "the only opportunity for a noncitizen to be released pending a decision on the asylum application is temporary parole 'for urgent humanitarian reasons or significant public benefit.'" *Banda*, 385 F. Supp. 3d at 1112 (quoting 8 U.S.C. § 1182(d)(5)(A)); *see also* 8 C.F.R. §§ 212.5(b), 235.3. And the "statute does not impose 'any limit on the length of detention' pending a decision on the asylum application and does not authorize bond hearings or release on bond." *Banda*, 385 F. Supp. 3d at 1112 (quoting *Jennings*, 583 U.S. at 296-301). As the Supreme Court in *Jennings*, held "1225(b)(1) mandates detention 'for further consideration of the application for asylum,' § 1225(b)(1)(B)(ii), and § 1225(b)(2) requires detention 'for a [removal] proceeding,' § 1225(b)(2)(A). The plain meaning of those phrases is that detention must continue until immigration officers have finished 'consider [ing]' the application for asylum, § 1225(b)(1)(B)(ii), or until removal proceedings have concluded, § 1225(b)(2)(A)." *Jennings*, 583 U.S. at 299.

## B.  Due Process/The *Banda* Test

The right to be free from physical restraint by the Government is "at the heart of the liberty that [the Due Process Clause of the Fifth Amendment] protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Confinement under this immigration statutory framework applies broadly; it is not limited to "a small segment of particularly dangerous individuals" *Id.* at 691 (quoting *Kansas v. Hendricks,* 521 U.S. 346, 356 (1997)). The

1  procedural protection from unwarranted detention is an administrative proceeding,

2  followed by judicial review. *Id.* at 692.

3  Even if the statutory terms of § 1225(b) do not require a bond hearing,

4  petitioner's continued detention must still comport with due process. *See Boumediene v.*

5  *Bush*, 553 U.S. 723, 797 (2008) (holding that habeas corpus applies to detainees who

6  were classified as enemy combatants and held at Guantanamo Bay; "few exercises of

7  judicial power are as legitimate or necessary as the responsibility to hear challenges to

8  the authority of the Executive to imprison a person."); *Wing Wong v. United States*, 163

9  U.S. 228, 235-237 (1896) (under the Due Process Clause of the Fifth Amendment,

10  temporary confinement is permissible for a noncitizen pending deportation but –

11  compulsory labor, confiscation of property, or other punitive measures are not).

12  Neither the Supreme Court nor the Ninth Circuit have settled on a test for

13  assessing the constitutionality of prolonged mandatory detention. *Banda*, 385 F. Supp.

14  3d at 1113.

15  The Court in *Banda* applied a multi-factor analysis, and declined to apply the test

16  of *Mathews v. Eldridge,* 424 U.S. 319, 334 (1976) to determine whether prolonged

17  detention without a bond hearing, for a case where the noncitizen is held under §

18  1225(b), violates procedural due process. *Banda,* at 1106. The issue here, different

19  from the question in *Mathews,* is "the more fundamental issue of whether any procedure

20  – such as a bond hearing – must be provided." *Id.* at 1106-1107.

21  **a.  Length of Detention**

22  Under the *Banda* analysis, the length of detention is "the most important factor."

23  *Id.* at 1118. Petitioner has been in custody since June 2024, about 20 months.

24

25

1    Petitioner and the Government agree this factor favors petitioner. Dkt. 5 at 14; Dkt. 8 at

2    7.

3         The Court finds that this factor favors petitioner. *See Banda*, 385 F. Supp. 3d at

4    1118 (finding this factor favored petitioner and granting bond hearing after 17 months

5    detention under § 1225(b) and collecting cases granting bond hearings after nine, ten,

6    sixteen, and nineteen months detention); *Cardozo v. Bostock*, No. 2:25-CV-00871-TMC,

7    2025 WL 2592275, at *1 (W.D. Wash. Sept. 8, 2025) (finding this factor favored

8    petitioner and granting bond hearing after 10 months detention under § 1225(b)).

9         **b. Likely Duration of Future Detention**

10        The second factor requires consideration of "how long the detention is likely to

11   continue absent judicial intervention; in other words, the 'anticipated duration of all

12   removal proceedings—including administrative and judicial appeals.'" *Banda*, 385 F.

13   Supp. 3d at 1119 (quoting *Jamal A.*, 358 F. Supp. 3d at 859).

14        Here, on March 10, 2025, the Immigration Judge issued a written order denying

15   petitioner's request for relief under form I-589, Application for Asylum and Associated

16   Relief and ordering petitioner's removal to Russia. Petitioner appealed this decision to

17   the Ninth Circuit on September 25, 2025. According to the Ninth Circuit's public website,

18   it takes approximately 6 to 12 months from the date of the notice of appeal to oral

19   argument and, following argument, most cases take three months to a year for the

20   Court of Appeals to decide the case. *See* U.S. Court of Appeals for the Ninth Circuit,

21   Frequently Asked Questions, www.ca9.uscourts.gov/content/faq.php (last accessed

22   February 9, 2026). Respondents argue they oppose the stay, and "[i]f the stay is lifted,

23

24

25

ORDER GRANTING HABEAS PETITION - 8

ICE's removal order will be deemed final, and [petitioner] will enter the removal period. 8 U.S.C. § 1231(a)." Dkt. 8 at 7.

While the Court cannot definitively determine the duration of petitioner's future detention, based on the current record, it appears likely petitioner will face many more months and potentially years in detention. *Barraza v. ICE Field Off. Dir.*, No. C23-1271-BHS-MLP, 2023 WL 9600946, at *6 (W.D. Wash. Dec. 8, 2023), *report and recommendation adopted sub nom. Barraza v. United States Immigr. & Customs Enf't Field Off. Dir.*, No. C23-1271 BHS, 2024 WL 518945 (W.D. Wash. Feb. 9, 2024) (cleaned up) (citing the Ninth Circuit website's timeline for appeals and noting that under this timeline a petitioner who filed his petition for review with the Ninth Circuit a few months prior could be facing two years or more of additional time in custody); *Hong v. Mayorkas*, 2:20-cv-1784-RAJ-TLF, 2021 WL 8016749, at *4 (W.D. Wash., June 8, 2021) (finding this factor favored petitioner where he faced "an additional 15 to 38 months" in detention because he was at the "earliest stages" of pursuing a petition for review before the Court of Appeals).

The Court finds this factor favors petitioner.

### c. Conditions of Detention

Third, the Court considers the conditions of detention. "'The more that the conditions under which the noncitizen is being held resemble penal confinement, the stronger the argument that he is entitled to a bond hearing.'" *Barraza*, 2023 WL 9600946, at *6 (quoting *Jamal A.*, 358 F. Supp. 3d at 860). "A claim for punitive detention requires a comparison of the conditions under which civil and criminal

detainees 'are held.'" *Ibarra-Perez v. Howard*, 468 F. Supp. 3d 1156, 1173 (D. Ariz. 2020) (citation omitted).

Petitioner is detained at NWIPC and alleges he is forced to sleep with a large number of people in the same room, and since there is almost no natural light, his vision has worsened. Dkt. 1, Ex. D, Chekhovskii Decl. at 66-67. He claims the lights are never completely turned off, which interferes with his sleep, his outdoor and recreation time is extremely limited, he is not receiving adequate meals, which is affecting his health, and when served dinner, it can be as late as 2 or 3 a.m. *Id.* The water detainees are forced to drink is allegedly the same water used to shower, and it smells "like a dirty mop." *Id.* at 67. Due to the limited number of officers and the large number of detainees, petitioner does not feel safe and has been subject to an altercation and had an officer refuse to intervene. *Id.*

Petitioner alleges the conditions have caused a decline in his mental health, as well as his physical health. Petitioner alleges he has had issues with receiving proper medical care – he had an extreme toothache, and NWPIC does not provide dental treatment, only extraction, and petitioner eventually had a tooth extracted because he had no other alternative. *Id.* at 68. He has "become much more irritable" and reacts to minor issues he would not have prior to detention and sleeps only 5 to 6 hours a night. *Id.* at 68.

Many "courts have [recently] found, detention conditions at NWIPC are 'similar...to those in many prisons and jails.'" *Maliwat v. Scott,* No. 2:25-CV-00788-TMC, 2025 WL 2256711, at *6 (W.D. Wash. Aug. 7, 2025); *Toktosunov v. Wamsley*, 25-cv-1724-TL, 2025 WL 3492858, at *5 (W.D. Wash. Dec. 5, 2025) ("Courts in this District

have...found that, at this facility, under circumstances similar to that of Petitioner, this factor favors granting a bond hearing."); *Amhirra v. Warden, Nw. Det. Ctr.*, No. 2:25-CV-01376-TL, 2025 WL 3718994, at *7 (W.D. Wash. Dec. 23, 2025) (same); *Doe*, 2024 WL 3291033, at *11 (citing cases); *Rahman v. Garland*, 24-cv-02132-JHC-TLF, 2025 WL 1920341, at *4 (W.D. Wash, June 26, 2025) (citing cases).

The Court finds this factor weighs heavily in favor of petitioner.

### d. Delays in Removal Proceedings

The fourth and fifth factors consider the nature and extent of any delays in the removal proceedings caused by petitioner and the government, respectively. "Petitioner is entitled to raise legitimate defenses to removal ... and such challenges to his removal cannot undermine his claim that detention has become unreasonable." *Martinez v. Clark*, No. 18-1669, 2019 WL 5968089, at *10 (W.D. Wash. May 23, 2019), *R & R adopted*, 2019 WL 5962685 (W.D. Wash. Nov. 13, 2019) (citations and internal quotation marks omitted).

Yet Courts should consider "dilatory tactics by the removable [noncitizen] may serve not only to put off the final day of deportation, but also to compel a determination that the [noncitizen] must be released because of the length of his incarceration." *Id.* (citations and internal quotation marks omitted).

With respect to the government, "[i]f immigration officials have caused delay, it weighs in favor of finding continued detention unreasonable.... Continued detention will also appear more unreasonable when the delay in the proceedings was caused by the immigration court or other non-ICE government officials." *Sajous v. Decker*, No. 18-2447, 2018 WL 2357266, at *11 (S.D.N.Y. May 23, 2018).

1  Even if "not the result of intentional action on behalf of government officials,

2  th[ese] delay[s] [are] attributable to the Government." *Martinez*, 2019 WL 5968089, at

3  *10 (citing *Sajous*, 2018 WL 2357266, at *11 ("the operative question should be whether

4  the [noncitizen] has been the cause of the delayed immigration proceeding and, where

5  the fault is attributable to some entity other than the [noncitizen], the factor will weigh in

6  favor of concluding that continued detention without a bond hearing is unreasonable");

7  *Dukuray v. Decker*, No. 18-2898, 2018 WL 5292130, at *4 (S.D.N.Y. Oct. 25, 2018)

8  (weighing delay caused by immigration court in favor of the petitioner)).

9  Here, the government admits "[t]here is no evidence that Petitioner has

10  intentionally caused any delay." Dkt. 8 at 7.

11  And there is no evidence that the Government has purposefully caused any

12  delays. However, any "delay in this case is a product of the BIA's and Ninth Circuit's

13  'crowded dockets,' which courts typically attribute to the Government—not the

14  Petitioner." *Djelassi v. ICE Field Off. Dir.*, 434 F. Supp. 3d 917, 923 (W.D. Wash. 2020)

15  (citing *Martinez v. Clark*, No. 18-1669, 2019 WL 5968089, at *10 (W.D. Wash. May 23,

16  2019), *R & R adopted*, 2019 WL 5962685 (W.D. Wash. Nov. 13, 2019) ("Most of the

17  delay. . .appears to have stemmed from the immigration court's crowded docket.

18  Although not the result of intentional action on behalf of government officials, this delay

19  is attributable to the Government.")).

20  Accordingly, the Court finds that the fourth factor is neutral, and the fifth factor

21  weighs slightly in petitioner's favor.

22  **e. Likelihood of Final Order of Removal**

23

24

25

The final factor involves consideration of "'the likelihood that the final proceedings will culminate in a final order of removal.'" *Banda*, 385 F. Supp. 3d at 1120 (quoting *Jamal A.*, 358 F. Supp. 3d at 860). Petitioner argues if his claim alleging the BIA erred in failing to review his fear of future persecution under the disfavored group analysis is ultimately meritorious, the case will likely be remanded to the Board for further analysis, and thus this factor should weight in favor of petitioner or neutral. Dkt. 5 at 20. The government argues this factor should favor the government because "Petitioner's only available relief from removal is his" pending Ninth Circuit appeal. Dkt. 8 at 7. The Court finds this sixth factor to be neutral.

The Court lacks sufficient information and declines to opine on the potential merits of petitioner's appeal of the denial of his asylum claim and associated relief which is pending before the Ninth Circuit.

### f. Weighing the Factors

In sum, the Court finds that four factors weigh in favor of granting petitioner a bond hearing, and the remaining factors are neutral. Accordingly, petitioner's detention has become unreasonably prolonged and due process requires a bond hearing.

### C. Bond Hearing

When the Court has determined that a detainee has been subjected to mandatory detention under § 1225(b) for an unreasonably prolonged period in violation of due process, the proper remedy is a bond hearing; under *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011) the government bears the burden of proving the detainee is a danger or flight risk by clear and convincing evidence. *See, e.g.*, *Banda*, 385 F. Supp. 3d at 1120; *Cardozo*, 2025 WL 2592275, at *2-3; *Rahman v. Garland*, No. 2:24-CV-

1  02132-JHC-TLF, 2025 WL 1920341, at *4 (W.D. Wash. June 26, 2025), *report and*

2  *recommendation adopted sub nom. Anisur R. v. Garland*, No. 2:24-CV-02132-JHC-TLF,

3  2025 WL 1919252 (W.D. Wash. July 11, 2025).

4        The Court finds that petitioner is entitled to a bond hearing with the procedural

5  requirements of *Singh*: there must be a contemporaneous record of the hearing, and the

6  Government bears the burden of proving by clear and convincing evidence that

7  petitioner is a flight risk or danger to the community. *Singh*, 638 F.3d 1196.

8                          **III.    Conclusion**

9        For these reasons, the Court GRANTS the habeas petition. The Court finds

10  petitioner's ongoing and prolonged detention under 8 U.S.C. § 1225(b) without an

11  individualized bond hearing violates the Due Process Clause of the Fifth Amendment to

12  the United States Constitution. The respondents are directed to:

13  A.    Hold a bond hearing **to occur within 7 calendar days** of this order.

14        1.  The bond hearing shall comport with the procedural requirements of *Singh v.*

15           *Holder*, 638 F.3d 1196 (9th Cir. 2011) – there must be a contemporaneous

16           record of the hearing, and the government bears the burden of proving by

17           clear and convincing evidence that petitioner is a flight risk or danger to the

18           community;

19        2.  Or, in the alternative, the government shall immediately release petitioner

20           under appropriate conditions of release;

21        3.  The parties are directed to file, on or before February 19, 2026, a joint status

22           report with the Court regarding the bond hearing and whether petitioner has

23           been released; and

24

25

4.  The Court will entertain a motion for attorney fees and costs. Any fee petition shall be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412, and shall be noted under Local Rule 7(d)(3).

Dated this 9th day of February, 2026.

_Theresa L. Fricke_

Theresa L. Fricke
United States Magistrate Judge